Joseph **RAPPOSELLI**, Plaintiff Below, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** Defendant Below, Appellee.

No. 226, 2009.

Supreme Court of Delaware.

Submitted: Dec. 16, 2009.

Decided: Jan. 19, 2010.

As Corrected Feb. 5, 2010.

Richard A. Zappa, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for appellant.

Susan List Hauske and Sherry Fallon (argued), Tybout Redfearn & Pell, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice:

An underinsured driver struck Joseph Rapposelli's vehicle with her vehicle. Rapposelli's insurer, State Farm, rejected his offer to settle his claim for damages in excess of the bodily injury coverage provided by the admitted tortfeasor under Rapposelli's underinsured motorist coverage. In the following tort action, a jury awarded compensatory damages in excess of the tortfeasor's bodily injury coverage, but the trial judge denied Rapposelli's motion for prejudgment interest. Because Rapposelli's underinsured motorist claim could only be resolved after a tort action that determined his actual damages arising from the accident and Rapposelli's settlement offer remained open for 30 days, we **REVERSE** and **REMAND** for an award of prejudgment interest as prescribed by 6 *Del. C.* § 2301(d).

## FACTUAL AND PROCEDURAL BACKGROUND

Rapposelli suffered injuries arising from a motor vehicle collision on January 4, 2004. The tortfeasor tendered bodily injury policy limits of $15,000. Rapposelli then made an underinsured motorist claim against his auto insurance carrier, State Farm. Rapposelli claimed his limits— $100,000, and alleged that the tortfeasor's tendered $15,000 bodily injury coverage inadequately compensated him for his injuries arising from the accident.

In its answer to Rapposelli's claim, State Farm admitted it covered Rapposelli for damages caused by an underinsured motorists, but denied that the tortfeasor was legally responsible for compensatory damages, and asserted seven affirmative de-

fenses that would preclude recovery. Rapposelli offered, in writing, to settle for $74,500, and kept the offer open for thirty days. State Farm rejected the settlement offer, and the parties proceeded to a jury trial.

At the jury trial, the parties only argued the nature and extent of Rapposelli's injuries and damages—State Farm did not contest the tortfeasor's negligence. The jury returned a verdict for Rapposelli that assessed compensatory damages at $100,000. The trial judge reduced the award by the $15,000 that the tortfeasor's insurer had already tendered, leaving Rapposelli with an $85,000 award.

Pursuant to 6 *Del. C.* § 2301(d), Rapposelli filed a motion for the taxation of costs and expenses that included a request for prejudgment interest. State Farm asserted that 6 *Del. C.* § 2301(d) did not entitle Rapposelli to prejudgment interest, because the statute only covers tort claims and Rapposelli's claim against State Farm arose from a contract between them. The trial judge denied Rapposelli's motion for prejudgment interest; he appeals.

## STANDARD OF REVIEW

We review questions of statutory interpretation *de novo*, because they include questions of law.[1]

## ANALYSIS

The General Assembly enacted 6 *Del. C.* § 2301(d) to promote earlier settlement of claims by encouraging parties to make fair offers sooner, with the effect of reducing court congestion.[2] Section 2301(d) allows prejudgment interest in *tort* actions for compensatory damages, but arguably victims of accidents caused by underinsured motorists must seek reimbursement for their full compensatory damages under their insurance *contracts* from their carriers. Although an insured claimant must often prove the elements of tortious conduct, contract law may apply to his claim. In varying situations, we must determine—for each part of the action—whether to apply tort or contract law.

We construe statutes "to give a sensible and practical meaning to [a] statute as a whole in order that it may be applied in future cases without difficulty."[3] Legislative intent takes precedence over the literal interpretation of a statute when the two would lead to contrary results.[4]

"[A]n action by an insured against his automobile insurance carrier to recover uninsured motorist benefits essentially sounds in contract rather than in tort."[5] We have, however, applied both tort and contract law to underinsured motorist claims. A review of our precedent reveals a circuitous, but consistent approach that

1. *Del. Bay Surgical Servs. v. Swier,* 900 A.2d 646, 652 (Del.2006).

2. 6 *Del. C.* § 2301(d) states:
   In any tort action for compensatory damages in the Superior Court or the Court of Common Pleas seeking monetary relief for bodily injuries, death or property damage, *interest shall be added to any final judgment entered for damages awarded,* calculated at the rate established in subsection (a) of this section, commencing from the date of injury, *provided that prior to trial the plaintiff had extended to defendant a written settle-* *ment demand valid for a minimum of 30 days in an amount less than the amount of damages* upon which the judgment was entered. (emphasis added).

3. *Nationwide Mut. Ins. Co. v. Krongold,* 318 A.2d 606, 609 (Del.1974).

4. *Kohanovich v. Youree,* 147 A.2d 655 (Del. 1959).

5. *Allstate Ins. Co. v. Spinelli,* 443 A.2d 1286, 1287 (Del.1982).

should guide parties and courts, during and in anticipation of litigation.[6]

In *Spinelli*, we held that "the claim [against a carrier] exists only by reason of the provisions of his insurance policy."[7] We applied the contract statute of limitations, "despite the requirement that the insured must establish that a tort was committed," because "the action is nevertheless one based upon an insurance contract."[8] The contract statute of limitations only began to run after the carrier denied the insured motorist's claim. Unlike other elements of Spinelli's claim, the bargained-for contract determined when and how he could apply for underinsured motorist coverage.[9] Because Spinelli's claim arose from his underinsured motorist coverage, we found that his claim did not accrue from the accident date.[10]

We later considered whether the language "in an action in tort" excluded uninsured motorist claims.[11] The argument that we rejected in *Harris* asserted that an uninsured motorist claim is purely contractual, and falls outside of a statute for determining tort damages.[12] We differentiated the "measures of damages" that tort law governs, from "the legislative right of subrogation" that tort law does not reach.[13] We similarly differentiate a judicial determination of the extent of compensatory damages arising from an accident from the existence of a contractual right to recover in the first instance.

In *Travelers Indem. Co. v. Lake*, we stated that "contract law principles do not entirely control suits to recover uninsured motorist awards. Instead, *Spinelli* suggests that a court should use tort law to assess the plaintiff's underlying damages."[14] In *Lake*, we applied the conflicts principle derived from tort law, rather than the "most significant relationships" test derived from contract law, to determine damages under *lex loci delicti* in Quebec. We acknowledged the General Assembly's intent to deal with increasing court congestion, as well as the fairness of applying tort principles to substantive issues.[15] A plaintiff should not obtain greater recovery from his underinsured motorist coverage than the amount of his entitlement to recover from a negligent motorist—we best achieve this result by applying the same principles of tort law to each source of recovery.[16]

Our precedent charts a circuitous, but consistent and equitable path: tort law applies to proceedings that result from the accident, and contract law governs only

---

**6.** Rapposelli asserts that *Dean–Seeney v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 3380119 (Del.Super. Apr. 19, 2007) stands for our courts' previous application of § 2301(d) to underinsured motorist claims. Although the trial judge addressed an underinsured motorist claim, he did not address interest on the unliquidated claims, because he found the plaintiff had not held open his written demand for 30 days, as required by the statute. The trial judge did not, however, address the presently disputed issue, whether a claim for prejudgment interest on an underinsured motorist judgment arises from a tort action, under § 2301(d). We decline to infer that *Dean–Seeney* stands for that proposition.

**7.** *Id.* at 1289.

**8.** *Id.* at 1290.

**9.** *Id.* at 1289.

**10.** *Id.* at 1289 n. 7.

**11.** *Harris v. New Castle County*, 513 A.2d 1307 (Del.1986).

**12.** *Id.*

**13.** *Id.*

**14.** 594 A.2d 38, 42 (Del.1991).

**15.** *Id.* at 43.

**16.** *See id.*

those aspects of the underinsured motorist claim that are not controlled by the resolution of facts arising from the accident. We could determine this occasionally narrow distinction by considering whether the determination of fault and the extent of damages arising from the accident affects resolution of the parties' disputed issue. For example, parties could resolve the existence of coverage or the length of the statute of limitations before or without knowledge of the accident. On the other hand, damages and fault require knowledge of the accident and its results. While the former set of issues constitutes a contract action, tort law governs the latter set. We observe that issues related to settlements often contain elements of both liability and coverage. Because those settlement issues require some knowledge of the accident or resulting injury, the action would sound in tort.

■ Here, Rapposelli assessed his damages from the accident and the impact on the application of his purchased underinsured motorist coverage, and offered State Farm an opportunity to settle. Each side considered the facts of the accident as well as the policy terms. State Farm never contested any issue determined by the policy language—State Farm conceded the underinsured's negligence, the tortfeasor's tender of her bodily injury limits, and Rapposelli's entitlement to underinsured motorist coverage. State Farm only contested Rapposelli's compensatory damages arising from the accident—a contention only a proceeding in tort could resolve.

The General Assembly's statutory language suggests that a "tort action," whose settlement should be fostered by a threat of prejudgment interest where a claimant made and held open a demand for settlement for 30 days, includes damages determined by trial where those damages exceed the amount plaintiff agreed to accept for settlement. A trial judge would ultimately calculate the contested prejudgment interest based upon the extent of damages—not the existence of or terms of coverage. Although Rapposelli would have no claim against State Farm absent his contract, our case law includes a claim for prejudgment interest in this context as a claim deriving from a "tort action," within the meaning of § 2301(d). To exclude Rapposelli's claim for prejudgment interest on damages determined after the required "tort action," simply because he had a contract to recover damages from his own carrier rather than from a third party tortfeasor, would run counter to our case law and the General Assembly's intent. Rapposelli complied with § 2301(d), in that his offer of less than the jury's judgment on damages remained open for 30 days.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the trial judge's denial of Rapposelli's claim for prejudgment interest on $85,000 and **REMAND** for a modified judgment that includes prejudgment interest pursuant to 6 *Del. C.* § 2301(d).