# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERZY WIRTH and FLOYD WHITE, Plaintiffs (Judgment Creditors), | ) ) ) | |
| v. | ) ) | C.A. No. N14C-02-137 DCS |
| TOP BAIL SURETY, INC., JOHN S. DONAHUE, IV, and HARRY O. JENNINGS, Defendants (Judgment Debtors). | ) ) ) ) ) | |

Submitted: February 5, 2021
Decided: April 14, 2021

*John S. Donahue IV's Motion for Objection to Confirmation of the Sheriff Sale* – **DENIED**

*IBDB 19 LLC, d/b/a Tri Star 218's Motion to Deny Confirmation and Set Aside Sheriff's Sale* – **DENIED**

## OPINION

Jerzy Wirth, *Pro Se* Plaintiff
Floyd White, *Pro Se* Plaintiff
Donald L. Gouge, Jr., Esquire, Attorney for Sheriff
Brian T. Murphy, Attorney for IBDB
John S. Donohue, IV, *Pro Se* Defendant

**STREETT, J.**

## Introduction

Jerzy Wirth and Floyd White ("Wirth", "White," and collectively, the "Plaintiffs") are judgment creditors of John S. Donahue IV, Harry O. Jennings, and Top Bail Surety, Inc. ("Donahue", "Jennings", and "Top Bail", collectively, "the Defendants"). White, Donohue, and third-party bidder IBDB 19 LLC, d/b/a Tri Star 218 ("IBDB"), for various reasons, assert that the Sheriff's sale at auction of Donahue's levied real estate should be set aside.

The Court now reviews Donahue's Objection to Confirmation of Sheriff Sale and IBDB's Motion to Deny Confirmation and Set Aside Sheriff's Sale.[1]  For the following reasons, the Court denies the Motions.

## Statement of Facts

This is a civil debt collection proceeding.  The subject property is 1810 Sycamore Street, Wilmington, Delaware 19805 (the "Property").

On February 14, 2018, the Court approved a Stipulated Judgment and, accordingly, entered judgment in favor of Plaintiffs and jointly and severally against Defendants in the amount of $406,856.37.

---

[1] Plaintiff White withdrew his Motion to Set Aside Sheriff Sale on February 4, 2021.

On July 12, 2018, a *fieri facias* attachment writ was issued to attach all of the goods, chattels, etc. belonging to all of the Defendants.[2]

On October 24, 2018, the Sheriff returned the writs against Donahue and Jennings nulla bona after Plaintiffs failed to provide the Sheriff with required documentation.

On January 24, 2020, a second *fieri facias* attachment writ was issued against Donahue.[3] On March 26, 2020, the Sheriff levied on the Property.

During this time, a global pandemic erupted. On March 12, 2020, Governor John Carney issued an Emergency Declaration ("Emergency Declaration") based on the Centers for Disease Control and Prevention's ("CDC") determination that COVID-19 had caused the pandemic.[4] Several modifications of the Emergency Declaration were then issued, including limitations on public access to government buildings.

---

[2] On August 9, 2018, counsel for Donahue and Top Bail filed a Notice of Bankruptcy Case Filing with this Court. According to the attorney for 1st Choice Bail Bonds ("1st Choice"), the entity with which Donahue subsequently became attached, Donahue emerged from Chapter 11 bankruptcy on December 4, 2019.

[3] On February 26, 2020, 1st Choice responded to the writ and claimed that Donahue is not subject to wage attachment because, pursuant to 10 *Del. C.* § 4913(c), Donahue is not an employee and is, instead, an independent contractor who pays 1st Choice for using its name. White challenged this response and the Court submitted an Order of Reference to a Commissioner in March 2020. The wage attachment issue has not yet been heard by a Commissioner.

[4] On March 22, 2020, the Emergency Declaration was modified. It closed all non-essential businesses and required essential businesses to follow social distancing and CDC guidelines. There have been numerous subsequent modifications and the Emergency Declaration remains in effect as of the date of this opinion.

Additionally, on March 24, 2020, Governor Carney issued a Sixth Modification of the Emergency Declaration ("Sixth Modification").[5] The Sixth Modification stayed all Sheriff's sales of real estate carried out by virtue of the execution process. The stay remained in effect until June 30, 2020 and Sheriff's sales did not resume until October 2020.

Prior to the pandemic, and since 2003, New Castle County Sheriff's sales had been held in Council chambers of the Louis L. Redding City/County Building ("City/County Building") in Wilmington. After the stay was lifted, sales have been held at an alternative site because public access to the City/County Building (and the Courthouse) was limited in response to the pandemic.

As such, on October 13, 2020, an auction took place at the Wilmington Police Athletic League ("PAL", "PAL Center") at 3707 North Market Street in Wilmington, Delaware. Donahue's levied Property was sold at that location on that day.

IBDB was the highest bidder at the auction. IBDB had bid $75,000.00 and it deposited the required 10% with the New Castle County Sheriff. However, on November 17, 2020, the sale was stayed because IBDB failed to make the final payment by the court imposed due date.

---

[5] Sixth Modification of the Declaration of a State of Emergency for the State of Delaware due to a Public Health Threat (Mar. 24, 2020).

On November 17, 2020, White filed a Motion for Application to Set Aside Sheriff Sale based on the location of the sale. On the same day, Donahue also filed a Motion for Objection to Confirmation of the Sheriff Sale based on health reasons.

On November 18, 2020, IBDB filed a Motion to Deny Confirmation and Set Aside Sheriff's Sale based on the location of the sale. IBDB also alleged that Ditech Financial LLC and GMAC should have been given notice.

On December 31, 2020, the Sheriff filed its response to the three motions to set aside the Sheriff's sale.

On January 19, 2021, the Court requested clarification regarding the notice to lien holders.

On January 20, 2021, IBDB filed its response to the Court's query and reiterated its notice argument.

On January 27, 2021, the Sheriff filed its response and stated that he did not send a copy to Ditech Financial LLC ("Ditech") because it was not listed on the Notice to Lien Holders.

On February 4, 2021, White filed a Notice of Plaintiff's Withdrawal of Plaintiff's Application to Set Aside Sheriff's Sale and Response to Court's Letter of January 19, 2021.

On February 5, 2021, White filed his responses to both Donahue's and IBDB's motions to set aside the Sheriff's sale.

**Parties' Contentions**

White's Motion to Set Aside alleged that the sale did not occur at the premises pursuant 10 *Del. C.* § 4974.[6]  However, White withdrew this motion to set aside on February 5, 2021 (and surmised that IBDB sought to set aside the sale because of financial difficulties).[7]

Donahue's Motion seeks delay for personal reasons.  Donahue does not allege any legal arguments, procedural impropriety, or wrongdoing. Instead, Donohue writes that he has health problems, was "unprepared for this [sale]," and that he and his nephew (who purportedly lives with him) would end up homeless.

IBDB contends that the location of the Sheriff's sale at the Wilmington PAL was not proper because the sale was not held at the courthouse or on the premises of the Property in violation of 10 *Del. C.* § 4974.  IDBD also claims that Plaintiffs' Notice to lien holders was flawed because Plaintiffs allegedly failed to send notice

---

[6] 10 *Del. C.* **§** 4974 states:

> Place for public sale of real estate. All sales of real estate, made by a sheriff by virtue of execution process, shall be made **on the premises to be sold, or at the courthouse for the county in which the premises are situated**, or in Sussex County, at the Sussex County Sheriff's Office *or at any public building in the county seat where the premises are situated*.  In Kent County, sales may also be conducted in any building in which the Sheriff's Office is located.  (Emphasis added).

[7] Prior to White's withdrawal of his motion to set aside the verdict, White had also sought a writ of mandamus concerning the Property (N20M-06-074).  On February 26, 2021, the Honorable Calvin L. Scott dismissed that action with prejudice.

to Ditech, the current holder of the mortgage, and GMAC, Inc. the holder of a judgment lien recorded on April 30, 2012 in C.A. No. N12J-02174.

As to notice to lien holders, White states that notice was given to the proper lien holders.[8] White also submitted several exhibits and requested that the Court take judicial notice under D.R.E. § 201 of the facts contained in Exhibits 1, 3, 4 and 5.[9]

The Sheriff answers that the PAL Center became the alternative auction site in response to the COVID-19 pandemic and pursuant to H.B. 547, which was passed in 2002, and gave sheriffs the flexibility to hold public sales anywhere in the County

---

[8] White writes that Ditech and New Residential Mortgage LLC ("New Residential"), the original lien holder, "are one in the same or share multiple connections and that [Ditech] was notified by certified mail . . . ." Plaintiff's Response to Court's Letter, at 3 (Feb. 4, 2021).

[9] White attached several exhibits to his response, including a May 2019 certified mail receipt addressed to Ditech at P.O. Box 10826, Greenville, South Carolina 29603-0826 signed by a D. Reynolds; an October 2, 2019 HousingWire.com article titled, "New Residential Investment buys Ditech Financial for $1.2 billion," which states in pertinent part that Ditech "sold off its forward mortgage business . . . to New Residential Investment[, which] . . . acquired 'select assets from Ditech Holding Corporation and Ditech Financial'"; certified mail receipts from the October 13, 2020 Affidavit of Notice to Lien Holders in the present matter showing that a notice was sent to NewRez LLC at P.O. Box 10826, Greenville, South Carolina 29603-0826 signed by a D. Reynolds; a Transfer of Claim Other than for Security from the U.S. Bankruptcy Court for the District of Delaware filed on April 17, 2019 showing that Ditech transferred John S. Donahue IV's mortgage for the Property to New Residential; and an August 21, 2018 affidavit signed by Edward Born, "Assistant Vice President for Ditech Financial LLC as Attorney-In-Fact for New Residential Mortgage LLC". (Exhibits 1, 3, 4, and 5).

seat for each County where such real estate is located.[10]

The Sheriff explained that, although holding a sheriff's sale on the subject property is an option set forth in 10 *Del. C.* § 4974, the logistics of having to sell multiple properties at different sites instead of from one location is impracticable.[11] Additionally, for the past 17 years, since 2003, more than 12,000 parcels of real property have been sold, without challenge, at locations other than the City/County Building or the situs of the property.[12] Moreover, pursuant to H.B. 547, the Sheriff has flexibility.[13]

## Standard of Review

This Court has broad discretion to confirm or set aside a sheriff's sale and the Court's decision will be upheld absent an abuse of discretion.[14] This Court has an

---

[10] H.B. 547 is titled "An Act to Amend Title 10 of the Delaware Code Relating to Executions". It states:

> Section 1. Amend § 4974, Chapter 49, Title 10 of the Delaware Code by adding the following language after ["]Sussex County Sheriff's Office["] "**or at any public building in the County seat where the premises are situated**." (Emphasis added).

[11] The Sheriff writes that there are some months when more than 100 parcels are sold.

[12] The Sheriff also writes that White and IBDB are the only parties that have challenged the location of the October 13, 2020 or November 10, 2020 sales held at the PAL Center.

[13] The synopsis for H.B. 547 explains that: "This legislation allows the Sheriff in each County to hold the public sale **anywhere** in the County seat for each County where such real estate is located. The New Castle County Sheriff does not have space in the new Courthouse in Wilmington and seeks to conduct the real estate sales in the City/County building". (Emphasis added).

[14] *Burge v. Fid. Bond and Mortg. Co.*, 648 A.2d 414, 420 (Del. 1994); 2 Victor B. Woolley, Woolley's Practice in Civil Actions, § 1108 (1906).

8

"inherent equitable power to control the execution process."[15]  When reviewing a sheriff's sale, it is the Court's responsibility to "protect the affected parties from injury or injustice."[16]  The Court must determine whether there was "some defect or irregularity in the process or mode of conducting the sale, or for neglect of duty . . . or some other sufficient matter . . . whereby the rights of parties to, or interested in the sale are, or may have been prejudiced."[17]

Regarding statutory interpretation, Delaware courts follow settled principles that require giving effect to the plain language of unambiguous statutes.[18]  When statutory language is clear and unambiguous, statutory interpretation is unnecessary as courts "have no authority to vary the terms . . . or ignore mandatory provisions."[19]  Moreover, a statute is only ambiguous if "it is reasonably susceptible to different interpretations, or if giving a literal interpretation to the words of the statute would

---

[15] *LSF9 Participation Trust v. Truitt*, 2017 WL 8787509, at *1 (Del. Super. 2017) (citing *Burge*, 648 A.2d at 420).

[16] *Id.*

[17] *LSF9*, 2017 WL 8787509, at *1 (citing *Petition of Adair*, 190 A. 105, 107 (Del. Super. 1936)).

[18] *Ovens v. Danberg*, 149 A.3d 1021, 1024 (Del. 2016).

[19] *Bd.* of *Adjustment of Sussex Cnty. v. Verleysen*, 36 A.3d 326, 331 (Del. 2012) (quotations and citations omitted).

lead to an unreasonable or absurd result that could not have been intended by the legislature."[20]

### Discussion

For the following reasons, this Court finds that the Sheriff's sale of the Property did not violate 10 *Del.* §4974, all lien holders received notice, and Donohue's Motion lacks merit.[21]

The Court finds that the location of the sale was proper and that Sheriff real estate sales can take place at the premises, the courthouse, the City/County Building, or in a public building.

10 *Del*. *C*. § 4974 states:

Place for public sale of real estate.

All sales of real estate, made by a sheriff by virtue of execution process, shall be made on the premises to be sold, or at the courthouse for the county in which the premises are situated, or in Sussex County, at the Sussex County Sheriff's Office ***or at any public building in the county seat where the premises are situated***. In Kent County, sales may also be conducted in any building in which the Sheriff's Office is located. (Emphasis added).

Here, the Property sale did not take place at the premises, the courthouse, or the City/County Building. It took place in Wilmington and it is undisputed that

---

[20] *Evans v. State*, 212 A.3d 308, 314 (Del. Super. 2019) (*quoting Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012)) (internal quotations omitted).

[21] While the Court is sympathetic to Donahue's circumstances, he fails to assert any legal basis upon which relief could be granted.

Wilmington is the county seat of the county where the levied property was situated. Moreover, despite IBDB's parsing of the statute,[22] H.B. 547 clearly allows the Sheriff in each county to hold Sheriff's sales of real property "anywhere in the County seat for each County where such real estate is located".

Furthermore, the Superior Court has determined that New Castle Sheriff sales may be conducted in public buildings. In *Re: New Castle County Sheriff*,[23] a 2020 decision, the Court wrote that 10 *Del. C.* § 4974 means that "sheriff's sales shall occur at the premises being sold **or in a *'public building' in the county seat [where the premises are situated]*.**"[24]

Here, the Wilmington PAL Center is a public building in the county seat in the county wherein the Property is located. The Sheriff explained that the PAL Center is a "public building on the days of the Sheriff sales because the Sheriff rented the PAL for the purpose of holding a public sale and was open to members of the public."[25]

---

[22] IBDB maintains that public building modifies Sussex County and does not apply to New Castle County.

[23] *Re: New Castle Cnty. Sheriff*, 2020 WL 5555085 (Del. Super. Sept. 16, 2020) (The Sheriff requested that the Court allow future real estate auctions to be conducted online due to the pandemic. The Court, without prejudice, denied this motion on procedural grounds because it deemed it to be a request for an advisory opinion).

[24] *Id.* (Emphasis added).

[25] Sheriff's Amended Response in Opposition in Part to Three Motions to Set Aside Sheriff's Sale, at ¶ 11 (Dec. 31, 2020).

The Delaware Supreme Court explained, in *Moore v. Wilmington Housing Authority*, that a building is a "public building" if it is "operated and maintained for a public purpose" and "its function is to benefit the public or the community."[26] Additionally, a building is public if it is "open to those members of the public who use it for its intended purpose . . . even if access is limited only to those members of the public . . . who use it for its intended purpose."[27] The auction did not violate 10 *Del. C.* § 4974 when it was held at the PAL Center.

As to the lien holder notice issue, the Court finds that notice was properly given. IBDB contends that the sale must be set aside because Plaintiffs filed a defective Affidavit and failed to send the Notice to two lien holders - Ditech and GMAC. However, the Affidavit clearly shows that GMAC was sent notice[28] and, in response to the Court's request for clarification, judgment creditor supplied sufficient information in its exhibits that Ditech and/or New Residential (its successor) was also on notice.

Under the Delaware Rules of Evidence, the Court may take judicial notice of

---

[26] 619 A.2d 1166 (Del. 1993).

[27] *Id.* at 1175.

[28] *See* Docket # 117, Affidavit of Notice to Lien Holders, Tenants, Record Owners and Persons Having an Interest of Sheriff's Sale of Real Estate for the October 13, 2020 Sheriff Sale, at 2.

adjudicative facts.[29] The facts contained in Exhibits 1, 3, 4, and 5 attached to White's response are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Here, exhibits include U.S. Postal Service certified mail receipts, a U.S. Bankruptcy Court for the District of Delaware filing, and a notarized affidavit from an Assignment of Mortgage. The Court has been supplied with the necessary information. Judicial notice is taken of White's exhibits marked 1, 3, 4, and 5. New Residential, not Ditech, is the current lien holder. New Residential and GMAC were given notice.[30]

## Conclusion

Accordingly, for the foregoing reasons, Defendant Donahue's Objection to Confirmation of Sheriff Sale is **DENIED.** Third party IBDB's Motion to Deny Confirmation and Set Aside Sheriff's Sale is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Diane Clarke Streett*
Diane Clarke Streett, Judge

---

[29] D.R.E. § 201. (a) Scope of Rule. This rule governs only judicial notice of adjudicative facts. (b) Kinds of Facts. ***A judicially noticed fact must be one not subject to reasonable dispute in that it is either*** (1) generally known within the territorial jurisdiction of the trial court or ***(2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.*** (c) When Discretionary. A court may take judicial notice, whether requested or not. ***(d) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.*** (e) Opportunity to Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. ***(f) Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding.*** (Emphasis added).

[30] IBDB did not dispute these exhibits.